**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID N. BADAGLIACCO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-2424 |
| | ) | |
| SAFARILAND, LLC, a Limited Liability | ) | Honorable Thomas M. Durkin |
| Company, | ) | |
| | ) | Magistrate Judge Beth W. Jantz |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

NOW COMES Defendant SAFARILAND, LLC ("Defendant" or "Safariland"), by and through its attorney, Joseph B. Carini, III, of Johnson & Bell, Ltd., pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, submits the following Memorandum of Law in Support of its Motion for Summary Judgment against DAVID N. BADAGLIACCO. In support thereof, Defendant states as follows:

## I.     INTRODUCTION

Plaintiff David Badagliacco alleges one count of Negligence (Count I) and one count of Willful and Wanton Behavior (Count II), against Safariland, LLC for injuries that he allegedly sustained as a result of being pepper sprayed in his right eye. SOF, ¶1. Badagliacco cannot recover for his claims for three reasons. One, Badagliacco signed an exculpatory agreement in which he assumed the risk of injury and promised not to hold Safariland liable for any such injuries that he sustained. SOF, ¶¶14-16. Two, there is no evidence of willful and wanton misconduct. Three, the only disclosed expert in this case, Patrick Schuerman, is not competent to testify to facts establishing proximate cause. The inescapable conclusion is that Safariland is entitled to summary

1

judgment on all of Plaintiff's claims.

## II.    ARGUMENT

### A.    Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Sides v. City of Champaign*, 496 F.3d 820, 826 (7th Cir. 2007) (citation omitted).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute through specific cites to admissible evidence or by showing that the nonmovant will "not be able to meet [its] burden of production at trial." *Spierer v. Rossman*, 798 F.3d 502, 508 (7th Cir. 2015). The moving party may discharge its initial responsibility by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the moving party has carried its burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Hutchison v. Fitzgerald Equip. Co.*, 910 F.3d 1016, 1021–22 (7th Cir. 2018) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "Instead, the nonmovant must set forth specific facts demonstrating a genuine issue for trial." *Id.* at 1022.

### B.    Summary Judgment is Appropriate Because Plaintiff's Claims Are Barred by the Exculpatory Clause In The Training Registration, Safety Rules & Waiver Form

#### 1.    The Exculpatory Clause is Written With Clear, Explicit, And Unequivocal Language and is Thus Enforceable

Badagliacco's claims are barred by the exculpatory agreement he signed at the start of the Four Day Less Lethal Instructor Certification Program Training Course ("April 2019 Training

Course"). "An exculpatory agreement constitutes an express assumption of risk wherein one party consents to relieve another party of a particular obligation." *Platt v. Gateway International Motorsports Corp.,* 351 Ill. App. 3d 326, 330 (5th Dist. 2004). Exculpatory agreements that contain "clear, explicit, and unequivocal language referencing the type of activity, circumstance, or situation that it encompasses and for which the plaintiff agrees to relieve the defendant from a duty of care'" are enforceable. *Munoz v. Nucor Steel Kankakee, Inc.,* 44 F.4th 595, 600 (7th Cir. 2022) ("Even exculpatory clauses with broad language are enforceable because the parties 'contemplated [a] similarly broad range of accidents' surrounding the agreement.") *citing Evans v. Lima Lima Flight Team, Inc.,* 869 N.E.2d 195, 203 (1st Dist. 2007). *See also Owen v. Vic Tanny's Enterprises,* 48 Ill. App. 2d 344, 345 (1st Dist. 1964) (applying exculpatory clause to bar plaintiff's claim against a gym for a slip and fall that occurred while leaving the facility's swimming pool).

It is undisputed that Badagliacco executed the Training Registration, Safety Rules & Waiver Form ("Waiver"), which states as follows:

> 1.    I fully understand that with any type of physical training the possibility always exists that an injury may occur, and I voluntarily and freely accept such risk that may occur to me or others participating in this course.
>
> ***
>
> 4.    I agree that I am voluntarily attending this course and/or at the request of my department, and in no way will I hold any student and/or participant, Safariland's Training staff, or any agencies affiliated with this program responsible for injuries I may sustain during this course. I have honestly and without malicious intent reported any present, past, or current personal injury that I may have sustained which may prohibit me in participating or attending this course to the primary instructor.
>
> ***
>
> I, the undersigned, have read and understand this Training Registration, Safety Rules & Waiver Form. In consideration for my participation in the Safariland Training Group course identified above, I have placed my initials next to each statement and do hereby sign below, as an affirmative agreement to abide by the terms herein.

SOF, ¶14. Badagliacco admitted that he read the Waiver, initialed each paragraph, and signed the Waiver. SOF, ¶¶14-16. Badagliacco also admitted that he had no concerns about the Waiver, and that he understood that it was a waiver. SOF, ¶16.

While broad, the Waiver clearly, explicitly, and unequivocally states that Badagliacco assumed the risk for any injury sustained during the physical training portions of the course. SOF, ¶14. The Waiver also clearly, explicitly, and unequivocally states that Badagliacco will not hold Safariland responsible for any injuries that he has sustained. SOF, ¶14. As such, the Waiver is an enforceable exculpatory agreement that bars Badagliacco's claims in this case. This Court should enter summary judgment in favor of Safariland and against Badagliacco for this reason alone.

> **2.    The Alleged Injury Was Within the Scope of Possible Dangers that Accompany Physical Training Sessions and Was Thus Contemplated By the Parties At the Time the Waiver Was Signed**

The injury to Badagliacco's eye allegedly arising from the pepper spray exposure during the April 2019 Training Course, and the subsequent infection by Acathanmoeba keratitis, falls within the scope of possible dangers that ordinarily accompany the physical training of police officers, and was thus within the contemplation of the parties at the time the Waiver was signed. "The foreseeability of a danger is an important element of the risk a party assumes and will often define the scope of an exculpatory agreement." *Platt*, 351 Ill. App. 3d at 331. However, "[t]he precise occurrence which results in injury need not have been contemplated by the parties at the time the contract was entered into." *Garrison v. Combined Fitness Centre, Ltd.*, 201 Ill. App. 3d 581, 585 (1st Dist. 1990). The agreement need not list every single potential risk; "'[t]he injury must only fall within the scope of possible dangers ordinarily accompanying the activity" and is thus reasonably contemplated by the parties. *Munoz*, 44 F.4th at 600-01. *See also Garrison*, 201 Ill. App. 3d at 585.

If "the plaintiff is 'on notice of the range of dangers for which [they] assume the risk of injury' and therefore had the ability 'to minimize the risks by exercising a greater degree of caution,'" then the exculpatory clause will cover the activity. *Munoz,* 44 F.4th at 601. The plaintiff's familiarity and experience with the activity is a factor in determining foreseeability. *Compare Id.* at 601-603. (holding that exculpatory clause barred plaintiff's claim for injuries resulting from fall off of defective outdoor stair case because climbing up and down the stair case was a foreseeable part of plaintiff's activities at the facility) *with Offord v. Fitness International, LLC,* 2015 IL App (1st) 150879, ¶ 5, 21 (holding that the exculpatory clause did not bar claim against gym for a slip and fall on an accumulation of water caused by from a leak from a defective roof). *See also Harris v. Walker,* 119 Ill. 2d 542 (Ill. 1988) ("[O]nly the most inexperienced of horseback riders would not understand that under certain circumstances a horse may become spooked … and cause a rider to fall from the horse.").

In an analogous case, *Garrison v. Combined Fitness Centre, Ltd.,* the plaintiff filed a lawsuit against his gym alleging that he was injured by an improperly designed bench press. *Garrison,* 201 Ill. App. 3d at 584. Specifically, the plaintiff alleged that the bench press upon which he was injured lacked an L-shaped safety device that should have been present and was present on other bench presses in the gym on the day of plaintiff's injury. *Id.* at 585. The plaintiff signed a membership agreement with an exculpatory clause that stated that all exercises, including the use and selection of machinery, were at the member's sole risk and responsibility, and that the gym will not be liable any injuries. *Id.* at 584. The trial court granted defendant's summary judgment motion based on this exculpatory clause, which plaintiff appealed. *Id.*

The appellate court noted that the plaintiff had instruction and experience in weightlifting, and was thus aware of the variation in features between the two bench presses, but chose to use

the bench lacking the subject safety feature, resulting in his injury. *Id.* Further, plaintiff was aware of the attendant dangers in the activity. *Id.* The court held that plaintiff's injury clearly fell within the scope of possible dangers ordinarily accompanying the activity of weightlifting, and that it was of the type that would normally be contemplated by the parties at the time the contract was made. *Id.* The court further held that the allegedly defective design was "more of a function of the manner in which the injury occurred" and need not have been contemplated by the parties. *Id.*

As in *Garrison*, the injury suffered by Badagliacco (*i.e.,* an injury to his cornea) was within the contemplation of the parties at the time the Waiver was signed. Badagliacco executed the Waiver on the morning that the pepper spray exercise was to take place. SOF, ¶¶6-10, 14-18. Badagliacco's exposure to pepper spray occurred as part of the physical training session for pepper spray exposures. SOF, ¶¶18-34. Because Badagliacco's pepper spray exposure was part of the physical training provided during the April 2019 Training Course, any injury to Badagliacco's eye caused by pepper spray exposure falls within the scope of possible dangers ordinarily accompanying a physical training session.

Also like *Garrison*, Badagliacco was already familiar with the attendant dangers of pepper spray exposures at the time that he attended the April 2019 Training Session. SOF, ¶¶39-42. Prior to signing the Waiver, Badagliacco had received training in pepper spray exposures during his police academy training at the Suburban Law Enforcement Academy. SOF, ¶¶39-41. During that course, he attended a classroom lecture and then participated in the practical portion of the course in which he was sprayed above both eyes with pepper spray. SOF, ¶¶40-41. Badagliacco also participated in in-house, non-demonstrative, trainings with the Skokie Police Department on the use of pepper spray. SOF, ¶42. Badagliacco was familiar with the risks posed by pepper spray at the time the Waiver was signed.

Moreover, Badagliacco was given instruction about the range of dangers posed by pepper spray for which he had assumed risk of injury during the very class offered by Safariland. Immediately prior to his exposure, Badagliacco attended a classroom instructional session dedicated entirely to pepper spray exposures. SOF, ¶¶17, 43-65. Cox testified that he warns his students about potential damage to the eye resulting from pepper spray. SOF, ¶50. Badagliacco got a perfect score on the written test about pepper spray exposures. SOF, ¶¶57-58.

Despite knowing of the attendant dangers of pepper spray, Badagliacco still elected to participate in the pepper spray exposure portion of the course. Participation in the pepper spray portion of the course was not mandatory. SOF, ¶52. Badagliacco was told by the instructor what the decontamination area consisted of beforehand. SOF, ¶¶27-28. Immediately prior to being exposed to pepper spray, Badagliacco observed other participants go through the obstacle course and observed the decontamination area and still elected to participate in the pepper spray exposure. SOF, ¶¶19-20, 22-25.

Despite knowing of the risk of injury posed by pepper spray exposure, knowing that he signed a waiver assuming the risk of such an injury, and observing a decontamination station that he now alleges was insufficient, Badagliacco still elected to participate in the pepper spray obstacle course exercise. If Badagliacco believed that the decontamination area was insufficient, he should have refused the pepper spray exposure portion of the course. He did not. Like the bench press design in *Garrison*, the allegation that the decontamination area was allegedly deficient was "more of a function of the manner in which the injury occurred" and need not have been specifically contemplated by the parties at the time that Badagliacco signed the Waiver.

Finally, Plaintiff attempts to undermine the validity of Badagliacco's signature on the Waiver through the testimony of his expert, Patrick Schuerman. Specifically, Schuerman opined

that Badagliacco may have felt compelled to sign the waiver to avoid getting sent home from the training session and to avoid being yelled at by his boss. SOF, ¶72. This opinion is speculative and not supported by any evidence. Badagliacco did not testify to being compelled to sign the Waiver or signing the Waiver under duress. Further, Schuerman's testimony that Badagliacco should have been informed of the dangers of pepper spray before signing the waiver is mistaken. The specific dangers of pepper spray need not be discussed if the injury in question falls within the scope of possible dangers ordinarily accompanying the physical training of police. As discussed above, injury by pepper spray is an ordinary danger arising from physical training of police. As *Garrison* shows, a waiver signed at the beginning of a relationship is enforceable against injuries occurring much later. Schuerman's opinion is also immaterial because Badagliacco was familiar with the attendant dangers of pepper spray from other trainings he had attended. SOF, ¶¶39-42. Schuerman's opinions offer no basis for setting aside the exculpatory clause in the Waiver.

The injury to Badagliacco's eye, which allegedly gave rise to an opportunistic Acanthamoeba keratitis infection, occurred during a physical training session in the April 2019 Training Course, and thus falls within the scope of possible dangers contemplated by the parties at the time the Waiver was signed. Summary judgment on Count I must be entered in favor of Safariland, as the exculpatory clause in the Waiver bars Badagliacco's claim.

## C.     Plaintiff Cannot Prove His *Prima Facie Case* for Willful and Wanton Conduct Or Negligence

Summary judgment on Counts I and II is appropriate because Badagliacco cannot establish the elements of willful and wanton conduct or negligence. "In Illinois, negligence plaintiffs must prove '[t]he elements of ... duty, breach, proximate causation, and damages' to prevail. *Lobianco v. Bonefish Grill, LLC,* 94 F.4th 675, 677 (7th Cir. 2024). Likewise, willful and wanton conduct also requires the plaintiff to prove the elements of negligence. *See Kirwan v. Lincolnshire-*

*Riverwoods Fire Protection District,* 349 Ill. App. 3d 150, 155 (2nd Dist. 2004).

### 1.    There is No Evidence of Willful or Wanton Conduct

There is no evidence that Safariland or its staff acted recklessly during the April 2019 Instructional Course. "In Illinois there are two varieties of willful and wanton conduct, intentional and reckless." *Kirwan v. Lincolnshire-Riverwoods Fire Protection District,* 349 Ill. App. 3d 150, 155 (2nd Dist. 2004). "Intentional willful and wanton conduct is committed with 'actual' or 'deliberate' intent to harm." *Id.* By contrast, reckless willful and wanton conduct is committed with "utter indifference" to or "conscious disregard" for the safety of others. *Id.*

"To constitute an act wanton, the party doing the act or failing to act must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of the surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury." *Id.* "The Illinois Supreme Court has provided two examples of reckless willful and wanton conduct: (1) 'a failure, after knowledge of impending danger, to exercise ordinary care,' or (2) 'a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care.'" *Munoz v. Nucor Steel Kankakee, Inc.,* 44 F.4th 595, 603-04 (7th Cir. 2022).

There is no evidence that Safariland, through Cox or any other employee, consciously disregarded Badagliacco's safety, or otherwise intended to harm him. As Cox explained during his deposition, the proper method to decontaminate from pepper spray is to wipe the spray from the forehead and from around the eyes to prevent it from spreading to areas that were not sprayed with pepper spray and to only use water to flush the eyeball directly if needed. SOF, ¶¶53-56. This method is based on Cox's experience as an instructor and his observations of the efficacy of other decontamination methods and is not indictive of a deliberate disregard for Badagliacco.

Further, there is no evidence that the course was conducted in an unsafe manner. Badagliacco admitted that he was not limited in the amount of time that he had to decontaminate, but that he felt rushed and therefore only decontaminated for a short period of time. SOF, ¶¶30-34. Badagliacco also admitted that Cox was six feet away when applying pepper spray to students; this is an appropriate distance, as the minimum distance required by the spray used was 3 feet. SOF, ¶¶22, 63-64. Police officers that attended April 2019 Training Course, Derek Ranken and Andrew Stein, also testified that nothing about the course or the decontamination area set up were unsafe. SOF, ¶¶79-80. Plaintiff raised no complaints at any time and returned to complete the entire course over the following three days of training, during which Badagliacco used weapons and explosive devices in close proximity to the other participants. SOF, ¶¶7, 36, 38.

There is no testimony to the contrary. Nor has any opinion been offered that the course was conducted with intent to harm its participants or with a reckless disregard for the participants. In fact, participants in the course were given an opportunity to submit anonymous reviews of the course and instructor Cox. SOF, ¶78. Fifteen participants did so, and all 15 gave top scores to both. SOF, ¶78. Badagliacco's classmates did not believe they were subjected to a reckless instructor. Badagliacco has produced no evidence of willful and wanton conduct. As a matter of law, the exculpatory clause in the Waiver is enforceable and the Plaintiff has presented no evidence to the contrary. As such, summary judgment on Count II is appropriate.

### 2. There is No Evidence That Improper Decontamination Procedures by Safariland Proximately Caused Plaintiff's Injury

Summary judgment is also appropriate on Counts I and II because there is no admissible evidence establishing that Badagliacco's injury was caused by his pepper spray exposure. Proximate cause encompasses both cause in fact and legal cause. *Blood v. VH-1 Music First,* 668 F.3d 543, 546 (7th Cir. 2012). "Cause in fact can only be established when there is a reasonable

certainty that a defendant's acts caused the injury or damage." *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 455 (1992). "To establish cause in fact, the plaintiff must show the defendant's "conduct was a material element and a substantial factor in bringing about the injury." *Blood,* 668 F.3d at 546. "Conduct is a material element and a substantial factor if, absent the conduct, the injury would not have occurred." *Krywin v. Chicago Transit Authority,* 238 Ill. 2d 215, 226 (2010). To create a question of fact, the plaintiff must show "with reasonable certainty" that the defendant's acts or omissions caused the subject injury. *Lobianco v. Bonefish Grill, LLC,* 94 F.4th 675, 677 (7th Cir. 2024). "It is axiomatic that liability cannot be premised merely upon surmise or conjecture as to the cause of the injury." *Lee,* 152 Ill. 2d at 455 (1992).

A party may only rely on admissible evidence to defeat a summary judgment motion. *Lewis v. CITGO Petroleum Corp.,* 561 F.3d 698, 704 (7th Cir. 2009). This rule applies to expert testimony. *Id.* Expert testimony is admissible if it meets the requirements of Federal Rule of Evidence 702 and *Daubert*." *Id.* at 705 *citing Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579 (1993). This admissibility analysis considers: (1) whether the witness is qualified; (2) whether the witness's methodology is reliable; and (3) whether the witness's testimony will help the factfinder understand the evidence or determine a fact in issue. *Asia Gaines v. Chicago Board of Education,* 717 F. Supp. 3d 746, 767 (N.D. Ill. 2024) *citing Gopalratnam v. Hewlett-Packard Co.,* 877 F.3d 771, 782 (7th Cir. 2017). "The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard." *Id.*

"For a witness to be considered an 'expert,' Rule 702 requires that person to be qualified as such 'by knowledge, skill, experience, training, or education.'" *Id.* However, "it is not enough that the proposed testimony comes from a qualified physician." *Id.* "[Q]ualifications alone do not suffice." *Id.* "A supremely qualified expert cannot waltz into the courtroom and render opinions

unless those opinions are based upon some recognized scientific method and are reliable and relevant under the test set forth by the Supreme Court in *Daubert*." *Id.* Under *Daubert*, "a district judge asked to admit scientific evidence must determine whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist." *Rosen v. Ciba-Geigy Corp.,* 78 F.3d 316, 318 (7th Cir. 1996).

The opinions of Patrick Schuerman, an OSHA inspector, cannot establish that pepper spray exposure injured Badagliacco's eye. Schuerman is not qualified to offer an opinion on whether pepper spray caused Badagliacco's injury because he has no science background. SOF, ¶¶74-75. While Schuerman opines that a high concentration of pepper spray can be classified as a corrosive under OSHA/ANSI regulations, this opinion is not sufficient to establish that the dose and concentration of pepper spray used in the April 2019 Training Course on Badagliacco was sufficiently corrosive so as to injure Badagliacco's cornea. SOF, ¶72.

The validity of Schuerman's opinions depend upon the assumption that the dose and concentration of pepper spray used during the April 2019 Training Course qualifies as a corrosive within the meaning of OSHA and ANSI regulations. SOF, ¶72. Schuerman's opinions treat pepper spray as if it is a dangerous and corrosive chemical similar to other workplace chemicals that OSHA and ANSI regulate. SOF, ¶72. This assumption is the basis for all of his opinions, including the opinions concerning the adequacy of the eye wash stations provided under OSHA and ANSI regulations, the overall safety of the course, the adequacy of the knowledge of the instructor, the safety of the decontamination method offered, and the best method of decontamination. SOF, ¶72. However, Schuerman does not base this opinion on anything; it is not based on any literature or on the opinions of a toxicologist or chemist. SOF, ¶72. Nor has Plaintiff adduced any other evidence that pepper spray is a corrosive within the meaning of OSHA and ANSI. SOF, ¶72. For

this reason alone, Schuerman's opinions are speculative and should be disregarded.

Moreover, Schuerman admitted that OSHA applies to Badagliacco's employer, the Skokie Police Department, and not Safariland. SOF, ¶73. Schuerman also admitted that the ANSI requirements for an eyewash station have not been adopted by OSHA and that there is no legal obligation for employers to adhere to ANSI's eye wash station requirements. SOF, ¶73. As such, the standards that Schuerman seeks to apply have no legal force. Further, it is unreasonable to penalize Safariland for the sufficiency of the facilities provided by the host police departments. SOF, ¶5. Safariland does not host these training courses at its own facility, it depends upon the largesse of hosting police departments to provide these facilities. SOF, ¶5. Safariland has no say in the design and construction of these facilities and cannot control whether there are formal eye wash stations. SOF, ¶5. As such, Schuerman's opinions about the sufficiency of the eye wash stations under OSHA and ANSI has no relevance to this case.

Likewise, Schuerman's opinions on the proper method of decontamination do not depend upon any scientific literature establishing that Cox's recommended decontamination method was unsafe, that pepper spray must be washed from the eyes after a certain number of minutes or it will cause damage, or that an alternative method of decontamination was safer and could have prevented Badagliacco's injury. Again, Scheuerman is not qualified to offer such an opinion because he is not a chemist or toxicologist. SOF, ¶75. Badagliacco has not produced an expert to opine that but for the decontamination method used, Badagliacco would not have been injured.

Without establishing these facts through competent expert opinion, Schuerman is merely speculating that the decontamination method used the April 2019 Training Course caused Badagliacco's injury. Plaintiff has no evidence that the decontamination method offered was inadequate or caused or contributed to cause this injury. Schuerman is also not qualified to offer

any opinion on the design of the course because he has no knowledge or training in pepper spray training courses and is not a police officer. SOF, ¶¶74-77.

What is more, even assuming *arguendo* that there is a causal connection between the pepper spray and the injury, Plaintiff himself testified that he was not limited in the amount of time he could take to decontaminate, but rather Plaintiff contends that he felt rushed and therefore he took less time than he otherwise wanted to take to decontaminate. There is no evidence in this case, based on any admissible expert testimony, that Plaintiff was injured as a result of the decontamination process or that he would not have suffered the same alleged injury had he taken more time to decontaminate or had he used a different method to do so. Plaintiff's attempt to make that connection, without admissible evidence to support it, is not sufficient to withstand summary judgment.

WHEREFORE, Defendant SAFARILAND, LLC, prays that this Honorable Court grant its motion for summary judgment, enter judgment in its favor and against Plaintiff on all aspects of his Complaint, and grant such other relief that this Court deems just and appropriate.


Date: January 3, 2025

                              Respectfully submitted,

                              JOHNSON & BELL, LTD.

                              *s/ Joseph B. Carini, III*
                              Joseph B. Carini, III
                              *Attorney for Defendant Safariland, LLC*

Joseph B. Carini, #6198227
Johnson & Bell, Ltd.
33 West Monroe Street, Suite 2700
Chicago, IL 60603
Telephone: 312/372-0770
Fax: 312/372-9818
E-mail: carinij@jbltd.com

<u>**CERTIFICATE OF SERVICE**</u>

I do hereby certify that on January 3, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

**s/ Joseph B. Carini, III**
Joseph B. Carini, III Bar Number:  6198227
Attorney for Defendant Safariland, LLC
Johnson & Bell, Ltd.
33 W. Monroe Street, Suite 2700
Chicago, IL  60603
Telephone:  312/372-0770
Fax:  312/372-9818
E-mail:  <u>carinij@jbltd.com</u>
