UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAVID BADAGLIACCO,

        Plaintiff,

        v.

SAFARILAND, LLC,

        Defendant.

No. 21 C 2424

Judge Thomas M. Durkin

MEMORANDUM OPINION AND ORDER

David Badagliacco was a police officer for Skokie, Illinois. He alleges that he participated in a training course operated by Safariland, LLC, that involved his exposure to pepper spray. Since the exposure, Badagliacco has suffered from an eye infection necessitating cornea replacement surgery. He claims that Safariland caused his injuries through negligent and willful and wanton operation of the course.

Safariland has moved for summary judgment, arguing primarily that Badagliacco's claims are barred by the exculpatory clause in the waiver Badagliacco signed. Safariland also argues: that no reasonable jury could find that it acted in a willful and wanton manner; and Badagliacco's evidence of causation—specifically the expert testimony he relies on—is insufficient for a reasonable jury to find in his favor. *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[S]ummary judgment will not lie if the dispute about a material fact

is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."). That motion is denied.

## I. Exculpatory Clause

Before participating in the training course, Badagliacco signed a waiver including the following exculpatory language:

> 2.      I fully understand that with any type of physical training the possibility always exists that an injury may occur, and I voluntarily and freely accept such risk that may occur to me or others participating in this course.
>
> \*      \*      \*      \*
>
> 5.      I agree that I am voluntarily attending this course and/or at the request of my department, and in no way will I hold any student and/or participant, Safariland's Training staff, or any agencies affiliated with this program responsible for injuries I may sustain during this course.

R. 81 at 4 (¶ 14).

Badagliacco argues that this language is too vague to be enforceable. To be enforceable under Illinois law, an exculpatory clause "must contain clear, explicit, and unequivocal language referencing the type of activity, circumstance, or situation that it encompasses and for which the plaintiff agrees to relieve the defendant from a duty of care." *Offord v. Fitness Int'l, LLC*, 2015 IL App (1st) 150879, ¶ 20, 44 N.E.3d 479, 484. Badagliacco argues that "the only reference within the waiver to the types of allegedly covered activity is 'any type of physical training.'" R. 83 at 3. According to Badagliacco "physical training" could "reasonably include such a broad range of activities so as to be functionally meaningless, rendering the exculpatory agreement unenforceably vague." *Id.*

2

The waiver also references "this course." R. 81 at 4 (¶ 14) ("I am voluntarily attending *this course* [and I will not hold anyone] affiliated with this program responsible for injuries I may sustain during *this course*." (emphases added)). But "this course" is no more definite than "physical activity." Neither term expressly states, in any sense, that the course includes being exposed to active pepper spray.

Safariland argues that because "Badagliacco's exposure to pepper spray occurred as part of the physical training session for pepper spray exposures," the references to "physical training" and "this course" clearly included exposure to active pepper spray. But bootstrapping from what occurred during the training course *after* Badagliacco signed the waiver is not a proper way to interpret the meaning and scope of the waiver's express terms. As discussed, the waiver does not mention pepper spray, whether active or not. Not even the title of the course—"4 Day [Instructor Certification Program] Less Lethal"—which Badagliacco hand wrote on the waiver form, expressly references active pepper spray. *See* R. 81 at 4. The parties do not discuss the meaning of the term "less lethal." And Safariland does not argue that the term "less lethal" implies training regarding active pepper spray. To the contrary, Safariland admits that "[t]raining regarding [pepper] spray does not always include exposure by the participants with active [pepper] spray." R. 89 at 7 (¶ 25). There is no evidence regarding whether Badagliacco was told that the training included active pepper spray exposure prior to signing the waiver. It is undisputed that Badagliacco signed the waiver before the training began, and it is undisputed that that classroom portion of the training informed that participants—including Badagliacco—that they

3

would be physically exposed to active pepper spray during the physical training portion of the course. In any case, Safariland does not argue that Badagliacco's knowledge beyond the four corners of the written waiver—including what he may have been orally told before signing—is relevant to the waiver's scope.

The express terms of the waiver do not mention the use of active pepper spray. While a valid waiver "need not list every single potential risk," it must clearly indicate the "possible dangers ordinarily accompanying the activity." *Munoz v. Nucor Steel Kankakee, Inc.,* 44 F.4th 595, 600-01 (7th Cir. 2022). Here, it is undisputed that pepper spray training does not always involve physical exposure to active pepper spray. In order to waive liability for exposure to active pepper spray, the waiver should have noted that "this course" and the contemplated "physical activity" included exposure to active pepper spray. Because the waiver lacked such a reference, it does not encompass injuries resulting from the use of active pepper spray.

## II. Willful and Wanton

Safariland next argues that there is insufficient evidence for a reasonable jury to find that Safariland acted negligently or willfully and wantonly. To succeed on a claim for either negligent or willful and wanton conduct, a plaintiff must first establish that the defendant breached a duty to the plaintiff. Badagliacco claims that Safariland breached its duty to him in two different ways: (1) the manner in which he was exposed to the pepper spray; and (2) provision of an insufficient decontamination system to clean his eyes after.

4

Although Badagliacco's complaint includes allegations of negligence and willful and wanton conduct regarding the manner in which he was exposed to the pepper spray, he does not make any convincing argument in support of these allegations in his brief. He does not argue that exposure to active pepper spray during a training course is negligent per se. He admits that he was exposed to active pepper spray during a previous training at the police academy. The closest Badagliacco comes to arguing that application of the pepper spray was negligent is by pointing to the evidence that Safariland's trainer did not closely study or follow Safariland's instructions in teaching the course. *See* R. 83 at 10. But Badagliacco's does not argue that the trainer's failure to follow Safariland's instructions resulted in any mistake in the manner in which the trainer applied the pepper spray to Badagliacco's face. He does not point to any evidence that the manner in which Safariland exposed him to pepper spray breached any duty it had for conducting such a training.

Separately from his allegation that Safariland was negligent in how it sprayed him with pepper spray, Badagliacco claims that Safariland's provision of a decontamination station was negligent. Badagliacco's brief focuses on his allegation that Safariland failed to provide an adequate decontamination station for him to clean his eyes after exposure. The decontamination station consisted of a single garden hose left on the ground for simultaneous use by several course participants. Badagliacco and other witnesses testified that in previous trainings involving active pepper spray (i.e., trainings provided by an entity other than Safariland), the decontamination station consisted of water sources specially constructed for multiple

participants to wash their eyes simultaneously. Additionally, Safariland admits that Patrick Schuerman, an inspector for the Illinois Occupational Safety and Health Administration, testified in this case that the decontamination station provided in Safariland's course did not meet OSHA standards. *See* R. 81 at 13 (¶ 72). Safariland's failure to provide a water source specifically designed for simultaneous decontamination by multiple course participants is sufficient evidence for a reasonable jury to find that Safariland was negligent in its provision of a decontamination station.

Safariland argues that, even assuming the evidence of negligence is sufficient, summary judgment should be granted on Badagliacco's claim of willful and wanton conduct because there "is no evidence that Safariland . . . consciously disregarded Badagliacco's safety, or otherwise intended to harm him." R. 82 at 9. But Safariland's director of training testified that "a garden hose on the ground . . . . is not an appropriate way of decontamination." R. 81-2 at 35 (133:22–134:4). This testimony constitutes an admission that Safariland knew that the decontamination station it provided was deficient. The fact that Safariland knew that the decontamination station was deficient is sufficient evidence for a reasonable jury to find that Safariland "consciously disregarded" Badagliacco's safety. And an action committed with "conscious disregard" is "willful and wanton" action under Illinois law. *See Harris v. Thompson*, 976 N.E.2d 999, 1011 (Ill. 2012). These facts are sufficient for Badagliacco's claim of willful and wanton conduct regarding the decontamination

station to be decided by a jury. *See id.* ("the issue of willful and wanton conduct is usually a question of fact for the jury").

## III. Expert Testimony

Lastly, Safariland argues that there is insufficient evidence for a reasonable jury to find that any breach of Safariland's duty with respect to provision of a decontamination station caused Badagliacco's injuries. Specifically, Safariland argues that neither: (1) the OSHA inspector, Patrick Schuerman; nor (2) Badagliacco's treating physician, Ali Djalilian, are qualified to offer an opinion regarding the causation of the injuries to Badagliacco's eyes.

The Court agrees that there is nothing about Schuerman's expertise that would qualify him to offer an opinion about the cause of an eye injury. But the Court does not understand Badagliacco to be offering Schuerman's testimony to prove causation. Rather, as discussed above, Badagliacco has called Schuerman to testify regarding the standard of care for provision of a decontamination station when training for use of a substance like pepper spray. Safariland has not challenged Schuerman in this regard, and the Court finds him qualified to testify about that issue. The causation of Badagliacco's eye injury, however, implicates the physiology of the human eye, and Badagliacco has not argued that Schuerman has any expertise in that subject area, so he is barred from testifying about it.

By contrast, Dr. Djalilian is the doctor who has treated Badagliacco's eye injuries. A treating physician's opinion about causation is admissible without disclosure as opinion evidence pursuant to Federal Rule of Civil Procedure 26(a)(2),

as long as the physician made the determination about the cause of the injury "in the course of providing treatment." *Meyers v. Nat'l R.R. Passenger Corp.*, 619 F.3d 729, 735 (7th Cir. 2010). Dr. Djalilian testified that in the course of his treatment of Badagliacco's injuries he determined that they were caused by the pepper spray. *See* R. 81-13 at 8 (pp. 24-25).

Safariland argues that because "Dr. Djalilian is an ophthalmologist and corneal specialist" and not "a toxicologist or epidemiologist," he is not "qualified to opine on whether the pepper spray, at the concentration and dose used, and the manner in which it was deployed, is capable of injuring the eye such that an . . . infection could develop." R. 88 at 9. This argument, however, goes to the weight of Dr. Djalilian's testimony, not its admissibility. As an expert in the functioning of the human eye, Dr. Djalilian is qualified to offer an opinion about whether pepper spray can cause the injury Badagliacco suffered. Safariland was of course free to retain a toxicologist or epidemiologist (who, in contrast to Dr. Djalilian, are generally not experts in the physiology of the eye) to rebut Dr. Djalilian's testimony, which might have required the Court to make a preliminary ruling about the balance of the two testimonies. Apparently, Safariland chose not to do this. In any event, Dr. Djalilian's testimony is competent and admissible on the issue of causation.

## Conclusion

Therefore, Safariland's motion for summary judgment [80] is denied.

ENTERED:

_Thomas M. Durkin_

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: May 9, 2025