**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID N. BADAGLIACCO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-2424 |
| | ) | |
| SAFARILAND, LLC, a Limited Liability Company, | ) | Honorable Thomas M. Durkin |
| | ) | |
| | ) | Magistrate Judge Beth W. Jantz |
| Defendant. | ) | |

**DEFENDANT SAFARILAND, LLC'S MOTION FOR A
JUDGMENT AS A MATTER OF LAW**

Defendant SAFARILAND, LLC ("Defendant" or "Safariland"), by and through its attorney, Joseph B. Carini, III and Ava L. Caffarini of Johnson & Bell, Ltd., pursuant to Federal Rule of Civil Procedure 50, submits the following Motion for a Judgment as a Matter of Law against DAVID N. BADAGLIACCO. In support thereof, Defendant states as follows:

**INTRODUCTION**

In this matter, Plaintiff David Badagliacco seeks to recover for injuries that he allegedly sustained as a consequence of an acanthamoeba keratitis infection in his right eye which allegedly arose because he was allegedly prevented from sufficiently decontaminating after being OC sprayed in his right eye during a Safariland training course. Plaintiff has presented his case at trial and failed to prove his *prima facie* case for three reasons. First, Plaintiff admitted at trial that he knew he was going to be sprayed with OC spray before he signed the Waiver disclaiming liability for all injuries that occurred as a consequence of the physical training in the Safariland course. Second, Plaintiff has presented no evidence or testimony that the decontamination station provided at the Safariland course proximately caused his injury or that a decontamination station that

1

complied with OSHA/ANSI regulations would have prevented his injury. Third, Plaintiff has adduced no evidence or testimony at trial to support the argument that the acanthamoeba entered Plaintiff's eye through the hose water, or through the OC spray itself, or through an insult in his cornea caused by the OC spray. The inescapable conclusion is that Plaintiff failed to prove his *prima facie* case for negligence against Safariland at trial, and that a judgment as a matter of law in favor of Safariland is appropriate.

## FACTS

Between April 16, 2019 and April 19, 2019, Safariland employee, Steven Cox, taught a four-day "train the trainer" instructor training course on less lethal weapons at the Elgin Police Department in Elgin, Illinois, through Safariland Training Academy ("Less Lethal Instructor Course"). Skokie Police Officers, Plaintiff David Badagliacco, and his partner, Matthew Orchard, attended the April 2019 Safariland course. The first day of the Less Lethal Instructor Course covered OC spray exposures and included mandatory OC spray exposure for all new participants in the course.

Plaintiff signed a Waiver at the start of the course on April 16, 2019, that stated as follows:

1.    I fully understand that with any type of physical training the possibility always exists that an injury may occur, and I voluntarily and freely accept such risk that may occur to me or others participating in this course.

\*\*\*

4.    I agree that I am voluntarily attending this course and/or at the request of my department, and in no way will I hold any student and/or participant, Safariland's Training staff, or any agencies affiliated with this program responsible for injuries I may sustain during this course. I have honestly and without malicious intent reported any present, past, or current personal injury that I may have sustained which may prohibit me in participating or attending this course to the primary instructor.

\*\*\*

I, the undersigned, have read and understand this Training Registration, Safety Rules & Waiver Form. In consideration for my participation in the Safariland Training Group course identified above, I have placed my initials next to each

statement and do hereby sign below, as an affirmative agreement to abide by the terms herein.

At trial, Plaintiff admitted that he was aware that an OC exposure was a required part of the Less Lethal Instructor Training Course before he attended the course that day. Likewise, Orchard testified that he received a flier informing all course participants that they would be exposed to OC spray and that he discussed this with Plaintiff. The flier was received by way of email and sent to both Orchard and Plaintiff in December of 2018. See Defendant's Trial Exhibit 28, attached hereto as **Exhibit A**; see also Defendant's Trial Exhibit 29, attached hereto as **Exhibit B**.

Plaintiff completed the OC exposure as required. When he attempted to decontaminate from the OC spray, he contends that he found that the decontamination station was crowded with other students, and that he had to wait several minutes to use a hose to wash out his eyes. This delay in washing out his eyes, Plaintiff contends, caused his injury.

Plaintiff supports his claim with the opinion of Patrick Schuerman, an OSHA expert. Schuerman opines that the decontamination station used at the Safariland course, which consisted of four hoses and wet paper towels, was insufficient because its design does not adhere to OSHA/ANSI regulations. However, Plaintiff offers no evidence to support his contention that following OSHA/ANSI regulations would have prevented Plaintiff's infection. Likewise, Plaintiff contends that the acanthamoeba entered his eye through the hose, or, alternatively, through contaminated OC spray. There is no evidence of this.

## ARGUMENT

### A. Legal Standard

Rule 50(a) permits a Court to enter judgment as a matter of law if "there is no legally sufficient evidentiary basis for a reasonable jury to find" in favor of a party. Fed. R. Civ. P. 50(a)(1). In other words, judgment as a matter of law is appropriate where a plaintiff has not presented enough

3

evidence to allow a rational jury to find in its favor. *See Massey v. Blue Cross-Blue Shield of Ill.*, 226 F.3d 922, 924-25 (7th Cir. 2000). A Rule 50(a) motion "may be made at any time before the case is submitted to the jury." Fed. R. Civ. P. 50(a). In evaluating a motion for judgment as a matter of law, the Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Alexander v. Mt. Sinai Hosp. Med. Ctr.*, 484 F.3d 889, 902 (7th Cir. 2007).

      **B.**      **This Court Should Grant This Motion and Enter a Judgment as a Matter of Law In Favor of Safariland Because Plaintiff Signed a Waiver Releasing Safariland's Liability.**

At trial, Plaintiff admitted that he knew that he was going to be sprayed with OC spray before attending the Safariland course on April 16, 2019. This admission means that Plaintiff knew that he was going to be sprayed with OC spray before he signed the Waiver, thereby rendering any injury he sustained as a consequence of the OC spray training a risk within the scope of possible dangers that ordinarily accompany the physical training of police officers and within the contemplation of the parties at the time the waiver was signed. "The foreseeability of a danger is an important element of the risk a party assumes and will often define the scope of an exculpatory agreement." *Platt v. Gateway International Motorsports Corp.,* 351 Ill. App. 3d 326, 331 (5th Dist. 2004). However, "[t]he precise occurrence which results in injury need not have been contemplated by the parties at the time the contract was entered into." *Garrison v. Combined Fitness Centre, Ltd.,* 201 Ill. App. 3d 581, 585 (1st Dist. 1990). The agreement need not list every single potential risk; "'[t]he injury must only fall within the scope of possible dangers ordinarily accompanying the activity" and is thus reasonably contemplated by the parties. *Munoz v. Nucor Steel Kankakee, Inc.,* 44 F.4th 595, 601 (7th Cir. 2022); *see also Garrison,* 201 Ill. App. 3d at 585.

4

If "the plaintiff is 'on notice of the range of dangers for which [they] assume the risk of injury' and therefore had the ability 'to minimize the risks by exercising a greater degree of caution,'" then the exculpatory clause will cover the activity. *Munoz,* 44 F.4th at 601. The plaintiff's familiarity and experience with the activity is a factor in determining foreseeability. *Compare Id.* at 601-603. (holding that exculpatory clause barred plaintiff's claim for injuries resulting from fall off of defective outdoor stair case because climbing up and down the stair case was a foreseeable part of plaintiff's activities at the facility) *with Offord v. Fitness International, LLC,* 2015 IL App (1st) 150879, ¶¶ 5, 21 (holding that the exculpatory clause did not bar claim against gym for a slip and fall on an accumulation of water caused by a leak from a defective roof); *see also Harris v. Walker,* 119 Ill. 2d 542 (1988) ("[O]nly the most inexperienced of horseback riders would not understand that under certain circumstances a horse may become spooked … and cause a rider to fall from the horse.").

This Court denied Safariland's summary judgment motion on the waiver issue for the following reasons:

> As discussed, the waiver does not mention pepper spray, whether active or not. Not even the title of the course—"4 Day [Instructor Certification Program] Less Lethal"—which Badagliacco hand wrote on the waiver form, expressly references active pepper spray. *See* R. 81 at 4. The parties do not discuss the meaning of the term "less lethal." And Safariland does not argue that the term "less lethal" implies training regarding active pepper spray. To the contrary, Safariland admits that "[t]raining regarding [pepper] spray does not always include exposure by the participants with active [pepper] spray." R. 89 at 7 (¶ 25). There is no evidence regarding whether Badagliacco was told that the training included active pepper spray exposure prior to signing the waiver. It is undisputed that Badagliacco signed the waiver before the training began, and it is undisputed that that classroom portion of the training informed that participants—including Badagliacco—that they would be physically exposed to active pepper spray during the physical training portion of the course. In any case, Safariland does not argue that Badagliacco's knowledge beyond the four corners of the written waiver—including what he may have been orally told before signing—is relevant to the waiver's scope.

The express terms of the waiver do not mention the use of active pepper spray. While a valid waiver "need not list every single potential risk," it must clearly indicate the "possible dangers ordinarily accompanying the activity." *Munoz v. Nucor Steel Kankakee, Inc.,* 44 F.4th 595, 600-01 (7th Cir. 2022). Here, it is undisputed that pepper spray training does not always involve physical exposure to active pepper spray. In order to waive liability for exposure to active pepper spray, the waiver should have noted that "this course" and the contemplated "physical activity" included exposure to active pepper spray. Because the waiver lacked such a reference, it does not encompass injuries resulting from the use of active pepper spray.

Evidence and testimony adduced at trial demonstrate that the aforementioned circumstances identified by this Court in the summary judgment ruling are present in this case. During trial, Plaintiff admitted that he knew he was going to be sprayed with OC spray before he arrived at the training course on April 16, 2019. Likewise, Plaintiff's partner, Matthew Orchard, admitted that he was aware he was going to be sprayed with OC when confronted with the Safariland equipment list that instructed class participants that they would be exposed to OC spray as a condition of their training and that Orchard and Plaintiff had discussed the equipment list prior to attending the training. This necessarily means that Plaintiff knew at the time that he signed the Waiver that the phrase "physical training" included an OC exposure as part of Safariland's Less Lethal course. Plaintiff's injury is precisely the sort of injury that this Waiver contemplates. As such, injury during the OC exposure was within the contemplation of the parties at the time the waiver was signed. This Court should apply the Waiver and enter a judgment as a matter of law in Safariland's favor and against Plaintiff.

### C. Plaintiff Has Not Established That Safariland's Conduct Caused Plaintiff's Injury.

#### 1. There is No Evidence That the Decontamination Station Used at the Less Lethal Course Caused Plaintiff's Injury.

Plaintiff adduced no evidence at trial establishing that Plaintiff's acanthamoeba keratitis infection was caused by an insufficient water station at the April 2019 Safariland Less Lethal

course. Proximate cause encompasses both cause in fact and legal cause. *Blood v. VH-1 Music First,* 668 F.3d 543, 546 (7th Cir. 2012). "Cause in fact can only be established when there is a reasonable certainty that a defendant's acts caused the injury or damage." *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 455 (1992). "To establish cause in fact, the plaintiff must show the defendant's "conduct was a material element and a substantial factor in bringing about the injury." *Blood,* 668 F.3d at 546. "Conduct is a material element and a substantial factor if, absent the conduct, the injury would not have occurred." *Krywin v. Chicago Transit Authority,* 238 Ill. 2d 215, 226 (2010). To create a question of fact, the plaintiff must show "with reasonable certainty" that the defendant's acts or omissions caused the subject injury. *Lobianco v. Bonefish Grill, LLC,* 94 F.4th 675, 677 (7th Cir. 2024). "It is axiomatic that liability cannot be premised merely upon surmise or conjecture as to the cause of the injury." *Lee,* 152 Ill. 2d at 455.

At trial, Plaintiff did not adduce an expert that testified that the decontamination station used at the April 2019 Less Lethal course – garden hoses and wet paper towels – caused the Plaintiff's injury. While Plaintiff's OSHA expert, Patrick Schuerman, opined that Safariland's decontamination station did not comply with OSHA or ANSI and that a hands-free eye wash station with an upward stream of water was required for the course under these standards, no competent witness has testified that having an OSHA/ANSI compliant eye wash station would have made a difference in preventing Plaintiff's alleged eye injury. There is simply no evidence that the configuration of the eye wash station caused Plaintiff's injury, or that Plaintiff's injury could have been prevented by providing an eye wash station that complied with OSHA/ANSI. Likewise, Plaintiff did not testify to sustaining insult to his eye from dirt or other detritus on the hose as a consequence of the hose being on the ground. This means that Plaintiff has failed to prove the causation element of his case. As such, Defendant is entitled to a judgment as a matter

of law.

### 2. Plaintiff Adduced No Evidence That the OC Spray or Hose Was The Source of His Acanthamoeba Infection.

Plaintiff also failed to adduce any evidence that the garden hose on the ground in the decontamination station or the OC Spray itself caused Plaintiff's acanthamoeba infection. "The case law in Illinois is clear: 'Proximate cause is not established, however, where the causal connection is 'contingent, speculative, or merely possible.'" *Campbell v. United States*, 904 F.2d 1188, 1194 (7th Cir. 1990) *citing Newell v. Corres*, 466 N.E.2d 1085, 1088 (1984). "There must be such degree of probability as to amount to a reasonable certainty that such causal connection exists." *Lough v. BNSF Ry. Co.,* 2013 IL App (3d) 120305, ¶ 24. "Liability 'cannot be predicated upon speculation, surmise, or conjecture as to the cause of the injuries.'" *Id.* "'Proximate cause can only be established when there is a reasonable certainty that the defendant's acts caused the injury.'" *Id.*

Plaintiff has also repeatedly argued that either the OC spray itself, or the hose on the ground, provided a pathway for the amoeba to enter Plaintiff's eye. Both of these theories are speculative. Foremost, both Dr. Herz and Dr. Djalilian testified that acanthamoeba is ubiquitous in the environment. This, by itself, makes the source of transmission uncertain and difficult to trace. Further, Dr. Herz testified that he would need to culture the OC spray and the hose water to determine whether either of those sources were contaminated with acanthamoeba. Plaintiff did not present an expert at trial that has done this and opined to these facts. The mere fact that it is possible for tap water to be contaminated with acanthamoeba does not definitively prove that the tap water coming from the hose in the decontamination station was the source of the acanthamoeba. The

8

mere fact that Plaintiff was sprayed with OC Spray in the right eye and later developed an acanthamoeba infection in that same eye does not establish that the acanthamoeba had contaminated the OC Spray. Plaintiff's argument is purely conjecture, cannot support a finding of proximate cause, and must be disregarded.

Finally, the notion that the OC spray could cause sufficient insult to Plaintiff's eye that allowed the acanthamoeba to establish an infection of the cornea is also speculative. While Drs. Herz and Djalilian both testified that this was possible, both also admitted that there is no link in the literature between acanthamoeba keratitis and OC spray exposure. Likewise, neither Dr. Herz nor Dr. Djalilian examined Plaintiff immediately after the OC spray exposure and thus do not know if Plaintiff sustained an insult to his cornea as a consequence of that exposure. Both Dr. Herz and Dr. Djalilian appear to be working backward from the knowledge that acanthamoeba is able to establish itself as a consequence of an injury to the cornea, but do not actually have evidence this occurred or sufficient expertise in OC sprays and their effect on the physiology of the human eye to be able to render an opinion as to whether the dose and concentration of the OC spray, (and the method of administration) used here could cause such an insult. This is speculation and must be disregarded. It is more likely that the acanthamoeba infection was able to enter Plaintiff's eye when Plaintiff scratched his eye three days after the OC exposure; this is consistent with what Plaintiff reported to Dr. Saul and his supervisor on April 22, 2019.

Plaintiff's case is purely speculative. He has no explanation for how Safariland proximately caused the acanthamoeba to enter his eye and relies instead upon speculation as to potential sources. This is simply not sufficient for Plaintiff to carry his burden. As Plaintiff is unable to prove a *prima facie* case for negligence, a judgment as a matter of law is appropriate.

9

WHEREFORE, Defendant SAFARILAND, LLC, prays that this Honorable Court grant its motion for a judgment as a matter of law, enter judgment in its favor and against Plaintiff on all aspects of his Complaint, and grant such other relief that this Court deems just and appropriate.

Date: May 22, 2026

Respectfully submitted,

JOHNSON & BELL, LTD.

*/s/ Ava L. Caffarini*
Ava L. Caffarini
*Attorney for Defendant Safariland, LLC*

Joseph B. Carini, #6198227
Ava L. Caffarini, #6312461
Johnson & Bell, Ltd.
33 West Monroe Street, Suite 2700
Chicago, IL 60603
Telephone: 312/372-0770
Fax: 312/372-9818
E-mail: caffarinia@jbltd.com

## CERTIFICATE OF SERVICE

I do hereby certify that on May 22, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

*/s/ Ava L. Caffarini*
Ava L. Caffarini
*Attorney for Defendant Safariland, LLC*